ALPHA PORTLAND CEMENT CO. v. SCHRATWIESER et al.

(District Court, E. D. New York. July 10, 1914.)

CORPORATIONS (§ 232*)—LIABILITY OF STOCKHOLDERS—UNPAID STOCK—STOCK ISSUED FOR PROPERTY.

A New York corporation was organized and exchanged its capital stock of $20,000, for the property of a New Jersey corporation, assuming its debts. Defendants owned practically all of the stock of the New Jersey corporation, which was capitalized at $250,000, and succeeded to the stock of the new company. One of defendants was also the principal creditor of the New Jersey company, and all of its debts except hers were paid. She made further advances to the new company, which was unsuccessful and became bankrupt. *Held*, on the evidence, that the transaction by which the property was transferred to a corporation with a reduced capital was not fraudulent, and that the stock of the bankrupt, having been issued in good faith in payment for property which included patents and might reasonably be believed to be worth the par value of the stock, could not be said to have been unpaid in whole or in part, so as to render defendants liable to creditors of the corporation under Stock Corporation Law N. Y. (Consol. Laws, c. 59) § 56.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 879, 880, 883, 884, 987; Dec. Dig. § 232.*]

In Equity. Suit by the Alpha Portland Cement Company against Catharine M. Schratwieser, Jacob Schratwieser, Arthur J. Schratwieser, George Graf, and William C. Foster, as trustee in bankruptcy of the Schratwieser Fireproof Construction Company. On final hearing. Decree for defendants.

Louis H. Porter, of New York City, for plaintiff.

Phillips & Avery, of New York City (Frank M. Avery and C. Royall Frazer, both of New York City, of counsel), for defendants.

CHATFIELD, District Judge. The Schratwieser Fireproof Construction Company of New Jersey was organized by the husband of Catharine M. Schratwieser, one of the defendants. Its principal property consisted of patents for fireproof floors, etc., issued to Mr. Schratwieser and used by him in fireproof construction. After Mr. Schratwieser's death the company lost money, and by May, 1908, some $27,000 had been advanced in cash by Mrs. Schratwieser, or was owed to her for rent. In that month a New York corporation was formed, which issued its stock in exchange for the property of the New Jersey cor-

poration, and assumed the debts of that corporation. The amount of stock issued in the New York corporation was $20,000, all of which (except 14 shares) went to Mrs. Schratwieser or her sons, and at the time of this action all the shares were standing in her name. The debts of the New Jersey company amounted to about $30,000, and a chattel mortgage had been given Mrs. Schratwieser to secure $15,000 of that total debt. It appears that the debts of the New Jersey corporation have since been taken care of by Mrs. Schratwieser or by the New York corporation, except that owing to herself. The New York corporation has not made money. Mrs. Schratwieser has continued to advance money to it, amounting to $6,633.51, and also has allowed it to occupy certain premises, for which she has not received rent. This now amounts to $11,700, and she has been paid one dividend on her claims in bankruptcy proceedings against the New York corporation. The plaintiff herein has recovered a judgment against this corporation for the sum of $4,755.10, with interest, which is unpaid except for $116.64 received as dividend in the bankruptcy proceedings. The machinery of the New Jersey corporation, outside of the patent rights and good will of the business, which was turned over to the New York corporation in exchange for the issuance of capital stock, was worth, new, about the sum of $12,500, and realized at the sale in bankruptcy but $990, having been appraised with some horses at about $1,600. Its only other property consisted of rights to patents and bills receivable, amounting on their face to not more than $3,500. The proceedings in connection with the organization of the New York corporation and the transfer of property in return for what was issued as fully paid stock were more or less informal, and were conducted by the attorneys upon the apparent assumption that the parties had the right to make the transfers, and that close observance of formality was unnecessary. The judgment creditors bring the present action, charging that the New York corporation was formed as the result of a fraudulent purpose on the part of Mrs. Schratwieser and the others interested in the New Jersey corporation to evade payment of its debts and to obtain the property in fraud of those creditors.

Inasmuch as the New Jersey corporation had the right to form the New York corporation and to transfer its assets, as the debts of the New Jersey corporation which were assumed by the New York corporation have been paid, and as none of the transactions have been concealed, it is impossible to see any basis for the charge of fraud, unless the plaintiff is able to show that the parties contemplated the loss of further money by the New York corporation and the concealment of assets through the transfers and claims of Mrs. Schratwieser. All stockholders, directors, and officers of the New Jersey corporation consented to the transfer.

It appears from the testimony that the Schratwieser business was supposed to be exceedingly valuable, and depended upon the use of the form of fireproof construction covered by their patents, under the fireproofing regulations of the city of New York. Up to the present time, according to the testimony, these regulations have prevented any profitable business based upon the use of the patents in question, and Mrs.

Schratwieser, as well as all of the other stockholders, would apparently have been better off (unless it be through the receipt of salaries) if the business had been wound up and the real estate had been rented for other purposes than they are at the present time. Two patents for fireproof lath are held by Mrs. Schratwieser as her personal property; but there is no evidence to show fraud on her part in claiming these as distinguished from the other patents which belonged to the New Jersey corporation. The right to use a patent can be granted by any formal assignment in writing; and the New York corporation evidently obtained all rights, as against any of the parties to this action, to the patents for which stock was issued. Section 4898, R. S. (U. S. Comp. St. 1901, p. 3387). The bankruptcy proceedings have prevented Mrs. Schratwieser from realizing more upon her claims than she would have had if the New Jersey corporation had gone out of business and paid its debts. It is difficult, therefore, to see how the charge of fraud can be made out.

The plaintiff bases a second cause of action upon the provisions of the Stock Corporation Law of New York, section 54, which provides:

"Every holder of capital stock not fully paid, in any stock corporation, shall be personally liable to its creditors, to an amount equal to the amount unpaid on the stock held by him for debts of the corporation contracted while such stock was held by him" (now Stock Corporation Law 1909 [Consol. Laws, c. 59] § 56)

—and charges that the assets shown by the testimony, consisting of old machinery, etc., were much less than the par value of the stock which went into the hands of Mrs. Schratwieser (namely, $20,000) over and above the chattel mortgage. The patents, according to plaintiff's contention, were of no value at all, having been sold in bankruptcy for $50; and it is urged that no substantial value was given in exchange for the stock of the New York company, if the debts of the New Jersey corporation were deducted from its assets. The plaintiff, therefore, contends that the stock of the New York corporation was issued in pursuance of a plan to secure Mrs. Schratwieser for her claims, and to obtain the stock of the new corporation without consideration. It claims, therefore, that the plan was to secure something for nothing, and that therefore the total par value of the stock can be recovered in this action for the benefit of the creditors who may join with the plaintiff in its prayer for relief. This involves the same proposition of deliberate intent to defraud those who dealt with the New York corporation on the assumption that a clear $20,000 over and above debts had been invested at the time of organization. The statutory liability can arise only upon such findings of fact as would substantiate the other charges of fraud if assets and security for debts were obtained by Mrs. Schratwieser for no consideration in return. The evidence does not indicate any fraudulent scheme, nor does it indicate that Mrs. Schratwieser and her sons obtained stock in the new corporation for merely nominal assets, unless we assume that the assets were known to them to be worthless, but were nevertheless of great value to themselves. The proposition is self-contradictory. The capital stock of the original corporation was $250,000; and the change to an incor-

poration under the laws of the state of New York, with a much smaller amount of stock, when considered with the hopeful opinion of the value of the patents which the Schratwieser family had received from their father, indicate that the parties expected to make money rather than to lose it, and could hardly contemplate fraud against those with whom they should deal in the future.

The only matters from which an inference of fraud can be urged in the transactions would seem to be involved in the charge that the New York corporation was organized with fictitious assets, for the purpose of making away with the proceeds of the future transactions. Inasmuch as Mrs. Schratwieser continued to pay the expenses of these transactions and to advance money, and has been losing more money than any other person from the outset, it is impossible to draw such an inference from the evidence. The patent rights were worth at the time of their sale by the New York corporation such price as could be obtained for them. If those organizing the New York corporation honestly fixed their valuation, then the unfortunate result that the patent rights became valueless, or that they suffered a gradual diminution until they were sold for a nominal price, would not prove that the action of the directors was incorrect. Good faith on the part of the directors is now recognized by the present form of the statute, which provides as follows:

"No corporation shall issue either stock or bonds except for money, labor done or property actually received for the use and lawful purposes of such corporation. Any corporation may purchase any property authorized by its certificate of incorporation, or necessary for the use and lawful purposes of such corporation, and may issue stock to the amount of the value thereof in payment therefor, and the stock so issued shall be full paid stock and not liable to any further call, neither shall the holder thereof be liable for any further payment under any of the provisions of this chapter; and in the absence of fraud in the transaction the judgment of the directors as to the value of the property purchased shall be conclusive; and in all statements and reports of the corporation, by law required to be published or filed, this stock shall not be stated or reported as being issued for cash paid to the corporation, but shall be reported as issued for property purchased" (Stock Corporation Law 1901, c. 354, § 42; now Consol. Laws 1909, c. 59, § 55),

instead of requiring, as formerly, that:

"No corporation shall issue either stock or bonds except for money, labor done or property actually received for the use and lawful purposes of such corporation. No such stock shall be issued for less than its par value." Stock Corporation Law, chap. 688, Laws of 1892, art. 3, § 42.

The misfortunes of the business and the lack of experience of the parties conducting it would seem to explain the bankruptcy in every way; and, under the circumstances, it seems strange that Mrs. Schratwieser was taken care of, even to the extent of preventing loss from any of the debts which were owed her by the New Jersey corporation. The creditors of that corporation might have made some objection to her receiving this security; but, as they have been paid, as her security was in no way a preference, and as the chattel mortgage was properly filed from year to year, the creditors of the New York corporation have not been deceived, and the bill should be dismissed.